**In the Matter of Victor C. BUTZ, Patricia Butz, Engaged in Farming, Debtors.**

**Bankruptcy No. 87–439–C J.**

United States Bankruptcy Court, S.D. Iowa.

Aug. 8, 1989.

Douglas J. Reed, Des Moines, Iowa, for debtors.

Kevin R. Query, Asst. U.S. Atty., Des Moines, Iowa for FmHA.

Anita L. Shodeen, Des Moines, Iowa, Chapter 12 trustee.

### DECISION PURSUANT TO REMAND IN CIVIL No. 88–366–A

LEE M. JACKWIG, Chief Judge.

## I. Introduction

On March 21, 1989 the Honorable Charles R. Wolle, U.S. District Court Judge

for the Southern District of Iowa, reversed the undersigned's confirmation of the debtors' Chapter 12 plan of reorganization for the reason that setoff rights of the Farmers Home Administration (FmHA) were not taken into account. In *Matter of Butz*, 86 B.R. 595, 602 (Bankr.S.D.Iowa 1988), the controlling conclusion of law was that "[a]lthough the FmHA and the ASCS are both part of the Department of Agriculture, the differences between the two preclude the FmHA from standing 'in the same capacity' as the ASCS for purposes of section 553(a)". The district court concluded the opposite.[1] However, the district court remanded the case for further proceedings to determine whether there are "other reasons why FmHA should not be allowed to exercise its setoff rights". *U.S.A. v. Butz*, No. 88–366–A, slip op. at 5 (S.D. Iowa March 21, 1989).

A hearing on the remanded issue was conducted on June 8, 1989.[2] Douglas J. Reed appeared on behalf of the debtors. Anita L. Shodeen, the Chapter 12 trustee, was present. Kevin R. Query, Assistant U.S. Attorney, appeared on behalf of the FmHA. Counsel for the FmHA submitted a post-hearing memorandum on June 22, 1989.

## II. Background

The factual background is set out in detail in *Matter of Butz*, 86 B.R. 595, 596–97 (Bankr.S.D.Iowa 1988). For the purpose of addressing the issue on remand, the following facts are highlighted:

1. The FmHA holds a mortgage on debtors' real estate as a result of paying off the debtors' contract balance in the forfeiture proceedings and succeeding to the interest of the contract vendor.

2. The debtors' Chapter 12 plan values the FmHA's first mortgage interest in the real estate at $102,500.00.

3. The FmHA objected to confirmation of the Chapter 12 plan in part on the basis that the debtors did not include the FmHA's administrative offset right to certain ASCS–CCC program payments in its allowed secured claim.

4. The proof of claim filed by the FmHA on April 23, 1987 indicates that the FmHA's claim is not subject to any setoff.

5. The program payments the debtors have received and will receive during the term of the Chapter 12 plan are property of the estate. 11 U.S.C. § 1207(a).

6. The debtors will receive a general discharge of debt, with certain exceptions, upon completion of their plan payments. 11 U.S.C. § 1228(a).

## III. Discussion

■ In the ruling on appeal, the district court adopted the reasoning of the U.S. District Court for South Dakota in *U.S. Through Small Business Admin. v. Rinehart*, 88 B.R. 1014 (D.S.D.1988) and concluded that "[a] federal agency owed money by a debtor may, pursuant to that statute (and subject to the statutory exceptions or pertinent equitable considerations), obtain by offset the payments another federal agency owes to the debtor." *Butz*, No. 88–366–A at 5.

In the *Rinehart* case, the SBA obtained approval from the ASCS–CCC to offset amounts the ASCS–CCC owed the SBA borrower against its claim before the borrower filed a petition seeking to reorganize under Chapter 11 of the Bankruptcy Code. After the commencement of the case, the ASCS–CCC offset the amount before the SBA sought relief from the stay to effect

---

1. At the present time there appears to be a difference of opinion with respect to the mutual capacity issue between two of the judges in the U.S. District Court for the Southern District of Iowa. See *Matter of Hunerdosse*, 85 B.R. 999 (Bankr.S.D.Iowa 1988) summarily *aff'd sub nom. U.S.A. v. Hunerdosse*, No. 88–364–B, (S.D. Iowa November 28, 1988). The FmHA did not appeal that district court affirmance.

2. This matter was heard in conjunction with the remanded issue in *Matter of Mehrhoff*, 88 B.R. 922 (Bankr.S.D.Iowa 1988), *rev'd* (capacity finding) and remanded (for further proceedings on the equity of offset) *sub nom. U.S.A. v. Mehrhoff*, No. 88–1488–A (S.D.Iowa March 21, 1989).

the previously approved offset. The bankruptcy court found that the SBA was not entitled to relief from the automatic stay based on lack of mutual capacity with the ASCS–CCC, that policy reasons dictated against permitting setoff in reorganization cases and that the SBA was subject to sanctions for continuing its collection process after the petition was filed and before obtaining relief from the automatic stay. *In re Rinehart*, 76 B.R. 746 (Bankr.D.S.D. 1987).

Although the district court in *Rinehart* disagreed with the bankruptcy court's conclusion of law that the two government agencies did not stand in the same capacity for purposes of setoff under the Bankruptcy Code, it affirmed the lower court's finding with respect to the SBA's violation of the automatic stay and allowed the order permitting recovery of damages against the SBA to stand. *Rinehart*, 88 B.R. at 1016–18. Since it did affirm the ultimate result, the district court found it unnecessary to assess whether the facts before it would have permitted a section 553 setoff. *Id.* at 1018–19. However, the district court did set forth dicta bearing on the issue under consideration:

> Under section 553, setoff is not mandatory. The bankruptcy court must exercise its equitable discretion in deciding whether to grant creditors' motions for relief from the automatic stay to effect administrative offsets under section 553. *See In re Southern Industrial Banking Corp.*, 809 F.2d 329, 332 (6th Cir.1987) (citing *United States v. Norton*, 717 F.2d 767, 772 (3rd Cir.1983)); *see also Bohack Corp. v. Borden, Inc.*, 599 F.2d 1160, 1165 (2nd Cir.1979) (decided under § 68 of the Bankruptcy Act). This discretion includes the authority to deny a creditor a right to setoff when one creditor would be unfairly favored over another. *See In re Southern Industrial Banking Corp.*, 809 F.2d at 332. Setoffs may also be disallowed when their effects would be inconsistent with the bankruptcy Act. *See Bohack Corp.*, 599 F.2d at 1165; *see also In re Mehrhoff, In re Hazelton*, 85 B.R. [400] at 405 [Bankr.E.D.Mich.1988]. The United States Bankruptcy Court for

the Eastern District of Michigan has held that the FmHA's right of setoff against the ASCS–CCC may be denied in bankruptcy "because allowing the setoff is inconsistent with the purposes of chapter 12 and the rehabilitation of American farmers". *In re Hazelton*, 85 B.R. at 405.

*Id.* at 1018.

By way of dicta in *Matter of Mehrhoff*, 88 B.R. 922 (Bankr.S.D.Iowa 1988), *rev'd* (capacity finding) and remanded (for further proceedings on the equity of offset) *sub nom. U.S.A. v. Mehrhoff*, No. 88–1488–A (S.D.Iowa March 21, 1989), the undersigned quoted and agreed with the reorganization policy concerns expressed by the bankruptcy court in the *Rinehart* case:

> Serious bankruptcy reorganization policy concerns are also raised by this issue. To allow a governmental agency like the SBA, FmHA, or the like to piggyback under the guise of "government" and off-set ASCS–CCC farm program payments may effectively deny farmers or ranchers a meaningful opportunity to attempt to reorganize in a Chapter 11, 12, or 13 setting. As stated, in the instant facts, the SBA is totally undersecured in terms of its collateral and would otherwise be treated as secured up to the amount of setoff and ASCS–CCC payments owing. See 11 U.S.C. § 506(a) and n. 4. Although the Court is unsure as to the total ASCS–CCC payments owing to the debtors, the SBA's claim is $163,250.24. Clearly, this impact would be devastating to these farmers and every farmer who, prior to filing, participates in the ASCS–CCC program and owes either the SBA or FmHA at the time of filing. This is contrary to the United States Supreme Court's policy analysis in *United States v. Whiting Pools, Inc.*, 462 U.S. 198, 103 S.Ct. 2309, 76 L.Ed.2d 515 (1983). Addressing the question of what is property of the estate under 11 U.S.C. § 541(a), Justice Blackmun, writing for the majority, observed in part:

In proceedings under the reorganization provisions of the Bankruptcy Code, a troubled enterprise may be restructured to enable it to operate successfully in the future.... By permitting reorganization, Congress anticipated that the business would continue to provide jobs, to satisfy creditors' claims, and to produce a return for its owners. Congress presumed the assets of the debtor would be more valuable if used in a rehabilitated business than if "sold for scrap."

*United States v. Whiting Pools, Inc., supra,* at 203, 103 S.Ct. at 2312. Congress and the President voiced serious concern for family farmer survival in the October, 1986, passage of Chapter 12 bankruptcy reorganization. See Bankruptcy Judges, United States Trustees, and Family Farmer Bankruptcy Act of 1986 which became effective November 26, 1986. *See also In re Erickson Partnership,* 68 B.R. 819 (Bankr.S.S.D.1987), *aff'd,* 74 B.R. 670 (D.S.D.1987); *In re Rennich,* 70 B.R. 69 (Bankr.D.S.D.1987). (Footnote omitted.)

*Id.* at 754–55. *Cf. Matter of Hazelton,* 85 B.R. 400 (Bankr.E.D.Mich.1988) (FmHA was not entitled to set off amount owed Chapter 12 debtor by the CCC against its claim for policy reasons; "lack of mutual capacity" analysis not adopted).

Agreeing with the reasoning set forth in the *Rinehart* decision, this court recently held that the FmHA did not stand in the

same capacity as the ASCS–CCC for the purpose of offsetting against its claim amounts the ASCS–CCC owed the Chapter 12 debtor. *Matter of Butz,* 86 B.R. 595 (Bankr.S.D.Iowa 1988). Implicit in the analysis and deliberation were the above quoted policy concerns.

*Mehrhoff,* 88 B.R. at 931–32. This court continues to agree with the policy concerns raised by the bankruptcy courts in the *Rinehart* and *Hazelton* [3] cases. Accordingly, the undersigned concludes that to allow government agencies to pursue administrative setoff in the context of a reorganization case would be inconsistent with the rehabilitative purpose of the Bankruptcy Code in general and at odds with Congress' varied efforts at saving the family farm in particular.

■ Turning to the specific facts of this Chapter 12 case, the record indicates that the FmHA did not obtain approval from the ASCS–CCC to offset amounts the ASCS–CCC owed the FmHA borrowers against its claim before its borrowers sought relief under Chapter 12 of the Bankruptcy Code. Indeed, the proof of claim prepared by the FmHA, signed by both the FmHA State Director and by an Assistant U.S. Attorney for this district and filed on April 23, 1987 states that the FmHA claim is not subject to setoff.[4]

To date the FmHA has not amended its proof of claim to include a right of setoff. The FmHA has not sought a motion for relief from stay to initiate administrative

---

**3.** In *Matter of Hazelton,* 85 B.R. 400, 406 (Bankr.E.D.Mich.1988), the bankruptcy court ordered the government to pay debtor's reasonable attorney fees and costs and to turn over a final program payment within 5 days. By means of its post-hearing memorandum, the FmHA has brought to this court's attention the stay pending appeal which was granted by the bankruptcy court and the subsequent district court reversal of the bankruptcy court's decision. *Matter of Hazelton,* No. 87–05459–G (Bankr.E.D.Mich. April 26, 1988); *Matter of Hazelton,* 86 B.R. 111 (E.D.Mich.1988). This court does not find that the subsequent docket entries undermine the general policy concerns expressed by the bankruptcy court. *Hazelton,* 85 B.R. at 405. From the materials attached to the government's memorandum, it appears that the stay pending appeal was granted for reasons particular to

that case. Likewise, the district court's reversal appears to have been based in part on the failure of the debtor, as appellee and cross appellant, to file any brief.

**4.** The court does not recall whether a waiver issue was raised at the time of the confirmation hearing. *See In re Britton,* 83 B.R. 914 (Bankr.E.D.N.C.1988) (FmHA failed to assert right to a setoff in its proof of claim and, accordingly, waived the right and could not reinstate it by amending the proof of claim to specify such right). *See also In re Stephenson,* 84 B.R. 74 (Bankr.N.D.Texas 1988) (FmHA was barred from claiming any right of setoff as to CCC payments because it failed to assert such claim in a timely fashion).

setoff procedures. Rather, the FmHA relies on a less than automatic or guaranteed right to an administrative setoff in its objection to the confirmation of debtors' plan. The FmHA contends that the plan fails to include the extent of the amount allegedly subject to setoff in the FmHA's allowed secured claim.

11 U.S.C. section 506(a) provides that "[a]n allowed claim of a creditor ... that is subject to setoff under section 553 of this title, is a secured claim ... to the extent of the amount subject to setoff ...". Ideally, the value of an allowed secured claim in a reorganization case is determined as of the time of the confirmation hearing. 11 U.S.C. § 506(a). The FmHA took no steps prior to the confirmation hearing to assert a right to attempt to obtain approval from the ASCS–CCC to offset the program payments in issue. *Cf. U.S.A. v. Ketelsen*, 880 F.2d 998 (8th Cir.1989) (FmHA requested offset of IRS refund before bankruptcy petition was filed). In essence, the FmHA asks the court to speculate that it would have been successful in any pursuit of an administrative setoff and to include those amounts in its secured claim.[5]

Parenthetically, it should be noted that the concerns attendant 7 C.F.R. section 13.-5(c) in a Chapter 7 case, as discussed in *Matter of Mehrhoff*, 104 B.R. 125 (Bankr.S. D.Iowa 1989), do not arise in this Chapter 12 context. That is, these Chapter 12 debtors will not receive a general discharge of their debt, with certain exceptions, until the plan payments are completed. 11 U.S.C. § 1228 (a). Additionally, the very plan of reorganization evidences the debtors' intent to pay as much of their debt as the Bankruptcy Code requires as a minimum and as their disposable income will permit as a maximum. 11 U.S.C. § 1225.

However, to conclude that the FmHA's claim to an administrative offset is much stronger in this Chapter 12 case than the SBA's claim was in the *Mehrhoff* Chapter 7 case can not be squared with Congress' intent to encourage debtors to repay their debts through reorganization chapters rather than seeking liquidation and discharge through Chapter 7. See 11 U.S.C. § 706(a) and H.R. No. 95–595, 95th Cong., 1st Sess. 380 (1977) U.S.Code Cong. & Admin.News 1978, pp. 5787, 5963, 6336 (the policy behind allowing Chapter 7 debtors to convert to reorganization cases is that debtors should be permitted the opportunity to repay their debts). Debtors who depend upon certain ASCS–CCC payments to meet certain expenses before bankruptcy—without interference from other agencies from which they have borrowed monies—should not find themselves, upon seeking relief under a reorganization chapter of the Bankruptcy Code, unceremoniously stripped of one of the means by which they might effectuate a plan of reorganization.

## IV.   Conclusion

WHEREFORE, the court finds that compelling reasons, as identified in the foregoing discussion, exist to deny the FmHA the right to pursue an administrative offset and, accordingly, to overrule the FmHA's objection to the debtors' plan of reorganization.

## ORDER

THEREFORE, the debtors' plan of reorganization is confirmed. Signed and filed this 8th day of August, 1989.

---

5. To the extent the FmHA claims a right to future payments under the various ASCS–CCC programs by operation of an administrative setoff, it does not comprehend Congress' intent that the present value of the allowed secured claim be ascertained with some degree of certainty to allow the court to assess the feasibility of the repayment structure. Certainly, the debtors' entitlement to future ASCS–CCC program payments depends upon contingencies set forth in the ASCS–CCC regulations governing such programs.